UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT FRAZIER,                    :
                                   :
        **Plaintiff,**           :
                                   :
        v.                      :   Civil Action No. 06-615 (GK)
                                   :
EDWINA WILLIAMS, *et al.*,         :
                                   :
        **Defendants.**          :

## MEMORANDUM OPINION

Plaintiff Robert Frazier ("Plaintiff") brings this action against Defendants Edwina Williams ("Detective Williams") and the District of Columbia, pursuant to 42 U.S.C. § 1983. This matter is now before the Court on Defendants' Motion for Summary Judgment [Dkt. No. 61]. Upon consideration of the Motion, Opposition, Reply, Surreply, the entire record herein, and for the reasons set forth below, Defendants' Motion for Summary Judgment is **granted**.

**I.   BACKGROUND** [1]

This law suit concerns an altercation at a downtown District of Columbia night club called LaCage, where Plaintiff worked as a "go-go boy." LaCage is widely perceived and had the reputation of being a gay nightclub which featured male entertainers who danced on a stage and on bar tops. Pl. Compl. ¶ 9.

---

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h) and the parties' summary judgment papers.

While there is substantial dispute about many of the facts, the following are undisputed. In the early morning of February 16, 2003,[2] Plaintiff completed his performance, dressed in street clothes, and joined the customers in the bar area of the nightclub. Plaintiff believed that two men in the audience had been criticizing or disparaging his performance as he danced. An altercation then occurred between Plaintiff and the two audience members he thought were criticizing his performance, who were later identified as Jonathan Tart and Shane Kline.

While it is undisputed that Plaintiff touched Kline first, and without consent, Plaintiff ended up being assaulted and suffering some physical injury, the extent of which is also disputed. There is contradictory evidence about whether Kline and Tart had or had not been drinking heavily. The next day, Plaintiff telephoned Sgt. Brett Parsons of the Metropolitan Police Department ("MPD") Gay and Lesbian Liaison Unit, and described the incident to him. At that time, Plaintiff was uncertain about pressing charges, because he did not want bad publicity or exposure for his employer and because his injuries did not appear to be permanent. The next day, Tart and Kline made their own reports to MPD claiming that Plaintiff had attacked Kline, and Kline swore out a complaint against Plaintiff for simple assault.

Defendant, Detective Edwina Williams, was assigned to investigate the incident. She interviewed all three parties and spoke with Sgt. Parsons. There is much dispute about the details of Detective Williams' investigation and how it was conducted. Ultimately, she prepared an affidavit in support of a warrant for Plaintiff's arrest. On March 31, 2003, Assistant United States

---

[2] There is some dispute about whether the incident occurred on February 16 or 17, 2003; however, the difference is immaterial and the date alleged in the Complaint will be used.

Attorney Catherine Worthington reviewed and approved the affidavit and a warrant was issued for Plaintiff's arrest.

Detective Williams called Plaintiff, at his home in Pennsylvania, to inform him that the warrant had been issued. Plaintiff agreed to turn himself in the next morning and did so. The Plaintiff was detained and incarcerated overnight and released the day after he had turned himself in. On that same day, the U.S. Attorney's Office informed the arraignment court that it was entering a *nolle prosequi*, thereby dismissing the case.

On April 3, 2006, Plaintiff filed the present one-count Complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleged that Detective Williams violated his Fourth Amendment right to be free from unreasonable searches and seizures, that Detective Williams violated his Fifth Amendment right "not to experience invidious discrimination" and that the District of Columbia is responsible for Detective Williams' "wrongdoing under principles of municipal liability." Compl., ¶ 34-36.

## II.   STANDARD OF REVIEW

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is, it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Arrington, id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)).  A fact is "material" if it might affect the outcome of the case under the substantive governing law.  Liberty Lobby, 477 U.S. at 248.

In its most recent discussions of summary judgment, in Scott v. Harris, 550 U.S. 372, 380 (2007), the Supreme Court said:

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 . . . (1986) (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 . . . (emphasis in original).

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.  In both Liberty Lobby and Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment.  Liberty Lobby, 477 U.S. at 255.  "To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing that there is a triable issue as to an element essential to that party's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)."  Arrington, 473 F.3d at 335.

**III. ANALYSIS**

    **A.  Defendant Detective Williams Is Entitled to Qualified Immunity**

The Supreme Court emphasized in Saucier v. Katz, 533 U.S. 194, 200-01 (2001), that qualified immunity is a question of law which the court should decide "at the earliest possible stage in litigation." Consequently, it is the first issue to which the Court will now turn.[3]

In Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 815 (2009), the Supreme Court gave the following succinct overview of the qualified immunity doctrine:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v Fitzgerald, 457 U.S. 800, 818 . . . (1982). Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567 . . . (2004) (Kennedy, J. dissenting) (citing Butz v. Economou, 438 U.S. 478, 507 . . . (1978) (noting that qualified immunity covers "mere mistakes in judgment whether the mistake is one of fact or one of law.").

Under pre-existing precedent, the Court had required the lower courts to first determine whether the facts alleged by a plaintiff made out a violation of a constitutional right and if they did, to then determine whether the asserted right was "clearly established" at the time of the violation.

---

    [3] It is hard to understand why the Defendants waited until two years after this lawsuit was filed to raise the issue of qualified immunity. As the Supreme Court has reiterated, it should be ruled on before defendants are put to the expense and inconvenience of discovery, motions practice, and, of course, trial. Saucier, 533 U.S. at 200 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation")).

Saucier, 533 U.S. at 201. In Pearson, the Supreme Court "ruled that the Saucier sequence is optional and that lower federal courts have the discretion to decide only the more narrow 'clearly established' issue 'in light of the circumstances in the particular case at hand.'" Rasul v. Myers, 563 F.3d 527, 530 (D.C. Cir. 2009) (quoting Pearson, 129 S. Ct. at 818). In this case, the Court sees no reason not to first address the first question asked in Saucier, namely whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. Thus, the first question to be answered is what, if any, constitutional right has been violated.

Plaintiff argues that his Fourth Amendment constitutional right to be free from unreasonable searches and seizures has been violated because of the manner in which Detective Williams conducted her investigation of the altercation at the LaCage club, and because the affidavit she prepared to support her request for an arrest warrant was false, misleading, and designed to obtain Plaintiff's false arrest and wrongful prosecution. In the case of a constitutional false arrest claim, a police officer is entitled to qualified immunity if "a reasonable officer could have believed that probable cause existed to arrest." Hunter, 502 U.S. at 228. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law." Id. at 229 (quoting Malley v. Briggs, 475 U.S. 335 (1986)). Thus, an officer who "'reasonably but mistakenly conclude[s] that probable cause is present'" is not liable for making the arrest. Hunter, id. (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

In this case, assuming the accuracy of Plaintiff's Statement of Material Facts Not in Dispute, there is no question that the facts and circumstances surrounding Detective Williams' investigation would have justified a reasonable police officer in her position to conclude that Plaintiff's arrest was

supported by probable cause. Detective Williams interviewed two different antagonists with two conflicting versions of how an altercation occurred, of who touched who first, and of the manner and impact of the touching. For purposes of evaluating the reasonableness of Detective Williams' conduct, it is most significant that Plaintiff admits that he first touched Kline on the night in question, and did so without his permission or consent. Defs.' St. of Material Fact, ¶ 8, 9. Moreover, it is undisputed that Detective Williams believed that, in the District of Columbia, such a movement constituted an "unwanted touching," which is an assault under the law of the District of Columbia. Id., ¶ 36.

In Brosseau v. Haugen, 543 U.S. 194, 197 (2004), the Supreme Court made it clear that "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. . . . If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." 543 U.S. at 198. The Court emphasized that "this inquiry 'must be undertaken in light of the specific context of the case.'" Id. (quoting Saucier, 533 U.S. at 201). Plaintiff has failed to clearly establish that the arrest for assault, under the particular facts of this case and the law of the District of Columbia, lacked probable cause, and has failed to cite any case law in support of that proposition.

The District of Columbia cites Daniels v. City of New York, 2003 WL 22510379, *3 (S.D.N.Y. 2003), in support of its position. In that case, the district court said that "[t]o the extent that the officers encountered two people who each appeared credible and who each claimed to be the victim of assault by the other, the police had probable cause to arrest either plaintiff or Pagalisi or

both." See also Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002); Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir. 2005). That is precisely the situation which Detective Williams faced. She encountered Plaintiff and Kline, who both appeared credible to her, and who each claimed to be the victim of assault by the other. At that point, under Daniels, Detective Williams had probable cause to arrest either the Plaintiff or Kline.

Finally, Plaintiff, himself, admits that:

> It is the policy of the District of Columbia that a light tapping of someone's shoulder to get that person's attention constitutes simple assault and can justify an arrest if the person who was tapped subsequently claims to be offended, even if there is no harm.

Plaintiff's Counter-Statement of Facts, pursuant to LCvR 56.1, Part I, ¶ 6.

Plaintiff's admission demonstrates that Detective Williams was acting in conformity with District of Columbia policy when she obtained a warrant for the arrest of Plaintiff, and therefore further supports the conclusion that Plaintiff's arrest was supported by probable cause. It must always be remembered that probable cause is evaluated "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Wolfe v. Perry, 412 F.3d 707, 717 (6th Cir. 2005); (quoting Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001)); Moorehead v. District of Columbia, 747 A.2d 138, 147 (D.C. 2000) (in determining probable cause, "the court evaluates the evidence from the perspective of the officer, not the plaintiff").

In summary, Plaintiff has failed to demonstrate that the officer was violating the Fourth Amendment in the situation she confronted. Given all the facts and circumstances, Detective Williams acted reasonably in concluding that probable cause existed to justify the issuance of an arrest warrant. Consequently, she is entitled to qualified immunity.

>    **B.**     **Plaintiff Cannot Establish the Existence of Any Policy or Custom of the Metropolitan Police Department Which Caused His Allegedly Unconstitutional Arrest**

As already established, Detective Williams' conduct, as alleged by Plaintiff, did not violate a constitutional right.  Even if it did, however, Plaintiff cannot prevail on his claim that the District of Columbia is responsible for Detective Williams' conduct "under principles of municipal liability."  Compl., ¶ 36.  Under the long established principles set forth in <u>Monell v. Dept. of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 694 (1978), the District of Columbia can only be held liable for a plaintiff's successful constitutional claims if the injury itself was caused by a policy or custom of the District of Columbia government.  The Supreme Court has explained that, "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."  <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985).

Here, viewing those facts which are undisputed, it is clear that there is no such District of Columbia policy or custom.  Thus, there can be no "affirmative link" between any District of Columbia policy and any alleged constitutional violation by Detective Williams.  At most, Plaintiff alleges that he was mistreated by a single police officer.  There is absolutely no evidence from which any reasonable jury could conclude that Plaintiff's alleged injury was caused by a custom or policy of the District of Columbia.  Indeed, Plaintiff's own words refute any such argument.  According to him:

> other than Detective Williams, ALL of the MPDC personnel with whom I came in contact regarding this incident . . . were uniformly sensitive, interested and concerned for the safety and security of my person and property.

Ex. E, Pl's MPD Complaint.  Plaintiff even recommended that "appropriate commendations be issued for the effective and responsible actions taken by" other police officers with whom he came into contact.  Id.

Consequently, Plaintiff cannot prevail on his municipal liability claims and the District of Columbia should be dismissed as a Defendant in this action.[4]

For all the foregoing reasons, Defendants' Motion for Summary Judgment is **grante**d.


June 2, 2009                                          /s/
                                                      Gladys Kessler
                                                      United States District Judge


**Copies via ECF to all counsel of record**

---

[4] Plaintiff also alleges in Count 1, ¶ 35, that Detective Williams violated his rights "under the Fifth Amendment not to experience invidious discrimination."  He contends, at ¶ 4 of the Complaint, that "Defendant Williams was motivated by animus against the Plaintiff because she perceived him to be gay and by her biases perceived from the nature of his employment as an entertainer."  There is no authority holding that Plaintiff's status as an entertainer may provide the basis for an equal protection claim under the Fifth Amendment.  In addition, it is far from established that "perceived sexual orientation" can provide the basis for a Constitutional claim.  See Steffan v. Perry, 41 F.3d 677 (D.C. Cir. 1994).